STATE *vs.* SPENCER &. McOMBER and JAMES McOMBER.

RUTLAND,
January,
1834.

Resisting a person deputized by a justice of the peace to serve process under the eleventh section of the justice act, is not impeding or "hindering an officer in the execution of his office," within the meaning of the fifth section of the act for the punishment of inferior crimes.

State
*vs.*
McOmber.

This was an information filed by the state's attorney against the respondents, alleging a violation of the fifth section of the "act for the punishment of certain inferior crimes and misdemeanors," and also for an assault. On the trial of the cause it appeared that one Lyman Felton was deputed to serve a justice's writ, returnable before Ira Jennings, Esq. a justice of the peace, in favor of one Henry J. Horton against one Lorin Shattuck. That the said Felton served the said writ by attaching five thousand shingles as the property of said Shattuck. That the said Felton, having taken possession of the shingles and removed them into the road, and while on his way home, the respondents met him in the road and took from him a part of the shingles and committed the assault complained of. That at the time they took the shingles from the said Felton, they informed him that the shingles were their property. Felton testified that he told the respondents, at the same time, that he had attached the shingles; but other witnesses, who were present and heard all the conversation, testified that Felton said to the respondents that the shingles were his property, and did not hear him say that he had attached them. The respondents gave evidence to prove that the shingles were their property.

The counsel for the respondents requested the court, 1st. To charge the jury that Felton's having a writ to serve against Shattuck would not justify him in taking the goods of the respondent, and that they might lawfully take the said goods from the possession of Felton. 2nd. That the said Felton, not being a known officer, but only an authorized person, it became his duty to show to the respondents the writ and deputation thereon, that they might see for themselves the authority under which he was acting; and that his, Felton's saying that he had *attached* the shingles, was not sufficient notice to them that he was acting as an officer, and that they would not be guilty of a violation of the aforesaid statute by taking the shingles from Felton under such circumstances.

On the first point the court charged the jury that if the prop-

RUTLAND,
January,
1834.

State
vs.
McOmber.

erty had been legally attached and in the custody of the officer, the respondents had no right to take it out of his custody by force ; and that previous to Felton's taking the possession of the shingles, the respondents would have the right to defend the shingles and prevent his taking them, but would not have the right to take the shingles from Felton after he had got possession thereof and had removed them into the public highway.

On the second point, the court charged the jury, that if the respondents, previous to their taking the shingles from the possession of Felton, knew that he was acting as a deputized person by virtue of a writ of attachment, and had the goods in his custody as such deputized person, and Felton told them so at the time, they would be guilty of violating the statute aforesaid by assaulting Felton and taking the shingles from his possession by force.

To this charge the counsel for the respondents excepted, and the exceptions were allowed and certified.

*Royce, for respondents,* contended, 1st. That an officer, by virtue of a writ of attachment, put into his hands to be served, acquires no right to take the property of any person other than the one against whom the attachment issued. That if he takes the goods of others, he is equally liable for a trespass, as though he had no process, and the owner has the same right to retake them as he would have if taken by any other person. 1 Chitty, 185-6. 1 Esp. 176, 303. 1 Swift's Digest, 528.

2nd, That the officer is protected by his process only while he is acting in conformity to it, and the moment he commits a trespass, he is no longer shielded either by his process or by the statutes. 1 Swift's Digest, 529.

3d. That opposing an officer, therefore, in committing a trespass, or endeavoring to prevent his carrying away the goods of a stranger to his process, is not " impeding or hindering an officer in the execution of his office," within the meaning of the statute under which the present prosecution is instituted. Laws of Vermont, 266.

4th. That a wide distinction exists between known and always responsible officers of the government, and persons deputed, who not unfrequently are the most irresponsible individuals of community. While it would be safe to permit the former to execute writs without requiring their production, it would be dangerous to give the latter the same privilege. It

would be affording every rogue an opportunity to steal the first horse he could lay hands on, and shield himself by saying, " *he had attached it.*"

RUTLAND,
January,
1834.

State
*vs.*
McOmber.

*State's Attorney.*—1. The plaintiff contends that by the eleventh section of the statute of 1797, in relation to the jurisdiction of justices of the peace, it is provided that a person deputized by a justice of the peace to serve any writ is entitled to the same protection in the service of such writ as the legal officer would be.—Comp. Laws, 127. That by that act he is constituted, *quoad hoc,* an executive officer within the meaning of the fifth section of the act of 1821 concerning inferior crimes.—Comp. Laws, 266.

2. That by the verdict of the jury the respondents were convicted of a common assault, and no cause is shown for setting aside the verdict on that count in the information. ·

To have warranted the verdict of the jury they must have found that the respondents were satisfied of the authority under which Felton took the shingles and had them in custody.

The opinion of the court was delivered by

MATTOCKS, J.—We are not prepared to say that the decision of the county court was erroneous upon the question raised before them. But as the verdict cannot stand on account of defect that is apparent upon the record, we have not so carefully examined the first question as we otherwise should have done. The indictment contains two counts—the first for impeding authority, and the second for an assault—and there having been a general verdict of guilty, the respondent was convicted on both counts ; and if the law will not warrant a conviction on both, there must be a new trial. The fifth section of the act against inferior crimes declares, " That if any person or persons shall hinder or impede any officer, judicial or executive, civil or military, under the authority of this state, in the execution of his office, such persons on conviction shall pay a fine not exceeding five hundred dollars each." This act being highly penal, is to be construed strictly, and no person is to be made subject to its penalty by implication or intendment. It was evidently made to ensure respect and obedience to all the constituted authorities of the state, who have duties to perform in administering and executing the law. The eleventh section of the justice act authorizes the justice in certain cases to depu-

RUTLAND,
January,
1834.

State
vs.
McOmber.

tize any suitable person to serve a writ: "and the person so authorized shall have all the power of the sheriff, to whom such writ shall be directed, in the service of such writ." Does this make such person the sheriff or any other officer? and if any other officer, by what name or style can he be called? Certainly it does not in terms any more than the twenty-fifth section of the same act, which says, "That when no proper officer shall attend a justice court, such justice shall have power to appoint some proper person to fill the place of such officer." And in neither section is there any enactment against resisting them. The meaning of both these sections seems to be, that where there is no officer certain duties of an officer may be performed by a private person, selected for that purpose; as in the absence of a proper number of militia officers, a private may be ordered to command a platoon, or to warn the company; but that would not make an officer of the soldier. A justice is not empowered to make sheriffs, deputies, or constables, the only officers of this sort known to our law; but for the purpose of speedy justice, he. is allowed, in a particular case, to place another in the officer's stead; but this no more makes such person an officer, than appointing a person guardian makes him parent of the ward, because he is then *in loco parentis;* and it cannot be presumed that it was intended by the law to place these minute men upon the same ground as the permanent officer of the government, by guarding them with a penal law. They have the remedy of common citizens by action or indictment for assault and battery, and that probably was deemed sufficient. But if it was so intended, it was not so expressed, and it is not for the court to supply any supposed defect, especially in a criminal law.

The judgment of the county court is reversed and a new trial granted.